IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| EFRAIM FLORES,<br>    Plaintiff, | §<br>§<br>§ | |
| v. | §<br>§ | EP-17-CV-318-DB |
| AT&T CORP.,<br>    Defendant. | §<br>§<br>§ | |

## MEMORANDUM OPINION AND ORDER

On this day, the Court considered Plaintiff Efraim Flores's ("Flores") "Second Motion for Partial Summary Judgment" ("Flores's Motion") filed in the above-captioned case on June 14, 2019. ECF No. 105. Defendant AT&T Corp. ("AT&T") filed a Response[1] ("AT&T's Response") on July 3, 2019. ECF No. 126. On July 10, 2019, Flores filed his Reply ("Flores's Reply"). ECF No. 130-1.

The Court also considered AT&T's "Amended Motion for Summary Judgment" ("AT&T's Motion") filed in the above-captioned case on June 17, 2019. ECF No. 108. Flores filed a Response ("Flores's Response") on June 25, 2019. ECF No. 114-1. On June 28, 2019, AT&T filed its Reply ("AT&T's Reply"). ECF No. 116.

After due consideration, the Court is of the opinion that AT&T's Motion and Flores's Motion shall both be denied for the reasons that follow.

## BACKGROUND

This case stems from Flores's invocation of rights under the Family and Medical Leave Act ("the FMLA"), 29 U.S.C. § 2601 *et seq.* Flores was employed as an Account

_____

[1] AT&T's Response to Flores's Motion also includes "Objections to Plaintiff's Summary Judgment Evidence." AT&T's Resp. 1, 26–29, ECF No. 126. The Court denied the Objections on October 3, 2019. Order, ECF No. 146. In this Opinion, the Court will only consider AT&T's Response to Flores's Motion. AT&T's Response 1–25, ECF No. 126.

Representative by AT&T at a call center in El Paso, Texas. AT&T's Mot. 2, ECF No. 108; Pl.'s Original Pet. and Req. for Disclosure 2, ECF No. 1-2 ("Flores's Original Pet."). Flores reported to Sales Coach Juan "Tony" Alvarez ("Alvarez") and Center Sales Manager Fernando Jacquez ("Jacquez"). AT&T's Mot. 2–3, ECF No. 108. While employed with AT&T, Flores was granted leave by AT&T under the FMLA for hypertension in 2015 and 2016. AT&T's Mot. 3, ECF No. 108. Between September 15, 2015, and October 2, 2015, Flores was also granted leave by AT&T under the FMLA for back abscesses. AT&T's Mot. 3, ECF No. 108; Flores's Original Pet. 2, ECF No. 1-2.

Flores was terminated by AT&T on April 21, 2016. AT&T's Mot. 15, ECF No. 108; Flores's Original Pet. 3, ECF No. 1-2. Flores alleges that AT&T "[chose] not to modify its performance policies to account for FMLA protected absences" and then "terminat[ed] his employment based on these *unadjusted* performance standards." Flores's Mot. 10–11, 14, ECF No. 105 (emphasis added). Flores asserts that evaluating him with unadjusted performance targets is an FMLA violation. *Id.* at 3–7. AT&T alleges that Flores was terminated after two warnings for missing performance targets and then "fail[ing] to meet 100% of his *adjusted* performance objectives/targets in March 2016." AT&T's Mot. 14–15, ECF No. 108 (emphasis added).

On August 9, 2017, Flores filed his Original Petition in the 120th Judicial Court of El Paso County, Texas. Flores's Original Pet., ECF No. 1-2. Therein, Flores claims that AT&T violated the FMLA. *Id.* On October 19, 2017, AT&T filed a Notice of Removal, as Flores's cause of action presents a federal question. Def.'s Notice of Removal 2, ECF No. 1. The instant Motions followed.

2

## 1. Flores's Factual Allegations

Flores alleges that AT&T terminated him after he failed to meet performance targets that were not adjusted to account for the FMLA leave he took. Flores's Mot. 10–11, 14, ECF No. 105. Flores alleges that "[t]he only documents showing the targets [ ] AT&T sets for [ ] Flores are the daily, weekly, and monthly reports,[2] and they do not reflect any adjustments [to account for FMLA protected leave]." Pl.'s Resp. to Def. AT&T Corp.'s Obj. to Pl.'s Summ. J. Evid. 5, ECF No. 131 (footnote added). In support of this claim, Flores points to the deposition of Lisa Robinson ("Robinson"), an AT&T Employee Relations Manager, who oversaw the human resources managers at Flores's call center. Flores's Resp. 12–13, ECF No. 114-1. In the deposition, Robinson affirmed that "all of those employees under [ ] Jacquez, who are under the same contract [as Flores], were held to the same performance standards, . . . whether or not they had taken FMLA leave." Robinson Dep. 18:23–19:5, ECF No. 114-3.

Flores also claims that AT&T "penalizes employees for taking medical leave when it refuses to adjust employees' performance targets and goals to take into account employees' absences which are protected under the FMLA." Flores's Mot. 10–11, 14, ECF No. 105 (citing Aff. of Graciela Varela, ECF No. 105-3; Aff. of Luis Velez, ECF No. 105-5). In support of this claim, Flores provides the sworn affidavit of Luis Velez ("Velez"), a former Retention Manager at AT&T. Aff. of Velez 2, ECF No. 105-5. According to Velez's sworn statement, "if the employee was on medical and/or disability leave[,] the performance metric percentages and targets were not adjusted and the employee was expected to meet the performance metrics and targets . . ." Id. at 3. By not adjusting performance targets, "AT&T

---

[2] The daily, weekly, and monthly reports are referred to as End-of-Day ("EOD") and Month-to-Date ("MTD") reports in subsequent pleadings. They will also be referred to as such in this Opinion.

penalized these employees for taking medical leave and/or disability leave because the employee[s'] [MTD] performance/percentage targets were negatively affected, which negatively affected their monthly and yearly performance metric targets . . ." *Id.* at 3. The unadjusted performance metrics were then used to "progress [employees] through the steps of discipline for termination as quickly as possible." *Id.* at 3.

Flores also provided a sworn affidavit from Graciela Varela ("Varela"), formerly a Senior Office Clerk at AT&T, who created EOD and MTD reports for various supervisors at AT&T. Aff. of Varela 2–3, ECF No. 105-3. According to Varela's affidavit, "**never** did . . . anyone at AT&T tell me to adjust the targets for an employee who was on FMLA leave." *Id.* at 2 (emphasis in original). Varela added that "AT&T would [not] adjust the employee's targets or goals to reflect FMLA or disability protected absences yet still require[d] these employees to perform as if they had [ ] 100% attendance." *Id.* (emphasis in original). Instead, the employee performance targets contained in the reports she prepared were only adjusted when an employee was on long-term disability leave which would only start after an employee had been out for eight consecutive days. *Id.*

Additionally, Flores alleges that AT&T Manager Cecilia Lezama ("Lezama") intimidated and pressured him whenever he called to take FMLA leave. Flores's Mot. 10, 14, ECF No. 105. Flores claims Lezama's treatment toward him prevented him from taking FMLA leave. *Id.*

Finally, Flores argues that even if AT&T does adjust performance targets to account for FMLA leave, his February 22, 2016, absence was misclassified as absence for "illness" rather than FMLA-protected leave. Flores's Resp. 4, ECF No. 114-1. As a result,

4

AT&T did not adjust Flores's performance targets for that absence, thus, penalizing him for taking leave under the FMLA. *Id.* at 5–6.

### 2. AT&T's Factual Allegations

AT&T distinguishes between two types of data, "Issued" and "Posted Data," maintained about each Account Representative's performance. AT&T's Resp. 3, ECF No. 126. Only "Posted Data" was used in the decision to terminate Flores. *Id.* at 5. "Issued Data" provides a temporary "snapshot" of the initial sales data of an Account Representative. *Id.* at 3. (citing Johnny Soliz Decl. ¶ 4, ECF No. 31-1; Jennifer Morales Decl. ¶ 4, ECF No. 31-2). The Issued Data is incorporated into EOD and MTD reports. *Id.* The EOD and MTD reports and the underlying Issued Data were not used to discipline or terminate Flores because they "did not reflect the final sales data or [P]osted [D]ata." *Id.* at 4. According to Johnny Soliz ("Soliz"), the General Manager for AT&T at Flores's call center, "[t]he purpose of the temporary EOD reports was to give [him], the Center Sales Managers[,] and the Sales Coaches an idea of how the sales were trending on any given day in order to provide daily feedback to Account Representatives and roughly [give] daily sales trends." Soliz Decl. ¶ 1, 5, ECF No. 31-1.

In contrast, "Posted Data" reflects "final sales amounts . . . which reflected sales that actually closed." AT&T's Resp. 3, ECF No. 126. According to Soliz, Issued Data could differ from Posted Data because "initial sales order[s] were often reduced or cancelled before they became final for many reasons (e.g., order was cancelled, a chargeback occurred, installation problems delayed the sale, etc.) and the temporary EOD reports did not reflect this information." Soliz Decl. ¶ 5, ECF No. 31-1.

The Posted Data was reflected in an employee's "Scorecard." AT&T's Resp. 4, ECF No. 126. As part of the Scorecard's preparation, the total number of call minutes for an

Account Representative was adjusted to reflect the protected FMLA leave taken thereby producing the "Total Adjusted Minutes." AT&T's Mot. 9, ECF No. 108. The Total Adjusted Minutes were then used and applied to performance objectives in the Scorecard "to ensure that the objectives were appropriately reduced to account for the Account Representative's protected leave time." *Id.* "Once those objectives were adjusted, the Account Representative's performance was then measured on his or her ability to meet the adjusted objective for the month." *Id.* at 10. The Scorecards were electronically generated by a computer program. *Id.* at 6. Flores's managers at AT&T—Alvarez, Jacquez, and Soliz—did not play a role in preparing Flores's Scorecard, and they could not change the data. *Id.*

According to AT&T, "[t]he Scorecards alone served as a basis for disciplining and dismissing employees. No other reports served as a basis for disciplining or dismissing employees. Neither EOD nor MTD data was considered for purposes of generating Scorecard results. Scorecards were only generated based on '[P]osted' [D]ata after the close of the month." AT&T's Resp. 5, ECF No. 126. AT&T claims that Flores's monthly Scorecards were adjusted according to the process described above. AT&T's Mot. 10–13, ECF No. 108. After Alvarez and Jacquez issued two warnings for failing to meet adjusted performance objectives, Flores again missed his adjusted performance objectives in March 2016. *Id.* at 14–15. Jacquez then recommended to Soliz that Flores be dismissed, and Soliz approved the request, dismissing Flores on April 21, 2016. *Id.*

Additionally, AT&T asserts that Lezama "played no role in approving or denying Flores's FMLA leave request." AT&T's Resp. 2–3, ECF No. 126. She merely coded the stated reason for the absence and notified another department of the request. *Id.*

6

Finally, AT&T alleges that Flores did not provide medical certification for his February 22, 2016, absence and is, thus, not entitled to FMLA leave for that absence. *Id.* at 17–19.

## SUMMARY JUDGMENT STANDARD

Flores and AT&T have each filed a motion for summary judgment. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . ." Fed. R. Civ. P. 56(c)(1). "[T]he plain language of Rule 56[ ] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact." *Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th Cir. 2012) (citing *Celotex*, 477 U.S. at 323). Where the burden of proof lies with the nonmoving party, the moving party may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. While the moving party "must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010).

A fact is "material" only if it would permit "a reasonable jury . . . [to] return a verdict for the nonmoving party" and "might affect the outcome of the suit." *Douglass v.*

7

*United Servs. Auto. Ass'n*, 65 F.3d 452, 458–59 (5th Cir. 1995), *aff'd en banc*, 79 F.3d 1415 (5th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986)). "If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response." *Duffie*, 600 F.3d at 371 (internal quotation marks omitted).

"When the moving party has met its Rule 56[ ] burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Id.* The nonmovant "must identify specific evidence in the record and articulate [how] that evidence supports that party's claim." *Id.* "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by 'only a "scintilla" of evidence.'" *Id.* (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)). "In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party." *Id.* (citing *Liberty Lobby*, 477 U.S. at 255). However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Liberty Lobby*, 477 U.S. at 255.

## ANALYSIS

The FMLA prescribes and proscribes certain rights. *See* 29 U.S.C.A. §§ 2612–15 (West 2009). FMLA prescriptive rights give the employee the right: (1) to take up to twelve work weeks of leave in a twelve-month period if the employee has a serious health condition and (2) upon return from FMLA leave, to restoration of equal pay and benefits. *Hardtke v. Hartford*, No. SA-04-CA-1006 NN, 2006 WL 2924942, at *5 (W.D. Tex. Oct. 10, 2006) (citing 29 U.S.C. §§ 2612, 2614).

In addition to the creation of prescriptive rights, the FMLA proscriptive rights prohibits employers from interfering with the exercise of FMLA rights. Specifically, the FMLA makes it unlawful for an employer to interfere with an eligible employee's prescriptive or proscriptive rights. *See* 29 U.S.C. § 2615(a). FMLA proscriptive rights "protect[] employees from retaliation or discrimination for exercising their rights under the FMLA." *Mauder v. Metro. Transit Auth. of Harris Cty.*, 446 F.3d 574, 580 (5th Cir. 2006). If an employer violates an employee's FMLA proscriptive rights, the employee can make a claim of FMLA retaliation and discrimination. *See id.* An employee seeking remedy for violations of FMLA rights is required to prove prejudice. *Downey v. Strain*, 510 F.3d 534, 540 (5th Cir. 2007).

Flores asserts that he is entitled to summary judgment on FMLA claims for (1) interference, and (2) retaliation and discrimination.[3] Flores's Mot. 1, ECF No. 105. AT&T argues that both claims fail, entitling it to summary judgment. AT&T's Resp. 1, ECF No. 126. The Court will examine Flores's interference, and retaliation and discrimination claims in turn.

### 1. Summary Judgment Should Be Denied On Flores's FMLA Interference Claim.

The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C.A. § 2615(a)(1) (West 1999). "For an employee to establish a prima facie FMLA interference claim, the employee must show: (1) he was an eligible employee; (2) his employer was subject to FMLA requirements; (3) he was entitled to leave; (4) he gave proper notice of his intention to take FMLA leave; and (5) his employer denied him the benefits to which he was

---

[3] Flores's Motion makes a claim for "retaliation" under the FMLA. Flores's Mot. 1, ECF No. 105. The caselaw treats claims for FMLA "retaliation" and "discrimination" the same. *See Mauder*, 446 F.3d at 580; *Bocalbos v. Nat'l W. Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir. 1998). Therefore, this Court will consider Flores's claim as a claim for "retaliation and discrimination" under the FMLA.

entitled under the FMLA." *DeVoss v. Sw. Airlines Co.*, 903 F.3d 487, 490 (5th Cir. 2018) (quoting *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017)) (internal quotations omitted).

The employee also must prove that the violation caused him prejudice. *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002); *see also Downey*, 510 F.3d at 540 ("[The] FMLA's remedial scheme . . . requires an employee to prove prejudice as a result of an employer's noncompliance."); *Mercer v. Arbor E&T, LLC*, No. 11-CV-3600, 2013 WL 164107, at *16 (S.D. Tex. Jan. 15, 2013) ("Assuming that these allegations are sufficient to create a factual issue as to whether [the defendant] interfered with [the plaintiff's] FMLA rights, [the plaintiff] must additionally show a real impairment of her rights, and resulting prejudice, to prevail on her FMLA [i]nterference claim."). However, FMLA interference claims "do not require a showing of discriminatory intent"—the plaintiff must prove only an act of interference. *Cuellar v. Keppel Amfels, L.L.C.*, 731 F.3d 342, 350 (5th Cir. 2013) (Elrod, J., concurring); *accord Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960 (10th Cir. 2002) ("If an employer interferes with the FMLA-created right to medical leave . . . [this] is a violation regardless of the employer's intent.").

In this case, Flores and AT&T disagree about whether the third, fourth, and fifth elements of an FMLA interference claim are satisfied. With regards to Flores's claims that AT&T prevented him from taking FMLA leave, the parties disagree about whether Flores suffered prejudice.

Specifically, Flores alleges AT&T interfered with his FMLA rights through three practices: (1) failing to adjust performance targets to account for FMLA leave and disciplining him based on failing to meet unadjusted performance targets; (2) intimidating and pressuring him

to prevent him from taking additional FMLA leave; and (3) not classifying his February 22, 2016, absence as FMLA leave. Flores's Mot. 12, 14–15, ECF No. 105. Summary judgment on Flores's FMLA interference claim should be denied because there are genuine disputes of material fact regarding each of the three ways in which Flores claims AT&T interfered with his FMLA rights.

### a. A Genuine Issue Of Material Fact Exists About Whether Flores's Performance Targets Were Adjusted To Account For His FMLA Leave.

Flores claims that "an employer must adjust performance standards to avoid penalizing an employee for being absent during FMLA-protected leave." Flores's Mot. 3, ECF No. 105. Flores then alleges that AT&T violated his FMLA rights when it "[chose] not to modify its performance policies to account for FMLA protected absences" and then "terminat[ed] his employment based on these *unadjusted* performance standards." Flores's Mot. 10–11, 14, ECF No. 105 (emphasis added). In support of this allegation, Flores cites to five MTD reports which he claims have unadjusted performance targets. *Id.* at 11–12.[4] Flores also cites to the affidavits of two AT&T managers who corroborated Flores's allegations. *Id.* at 10 (citing Aff. of Varela, ECF No. 105-3; Aff. of Velez, ECF No. 105-5).

In response, AT&T argues that Flores is not entitled to adjustments to performance targets to account for FMLA leave. AT&T's Resp. 13, ECF No. 126 (citing *Henderson v. City of Dallas*, No. 3:16-CV-3317-S, 2018 WL 4326936, at *4 (N.D. Tex. Sept. 10, 2018), *appeal dismissed sub nom. Henderson v. Woods*, No. 18-11215, 2018 WL 7814680 (5th Cir. Nov. 28, 2018)). Alternatively, AT&T claims that employees are not terminated based

---

[4] Citing Employer AT&T's October 2015 MTD Report 148–154, ECF No. 105-10; Employer AT&T's November 2015 MTD Report 71–77, ECF No. 105-11; Employer AT&T's December 2015 MTD 71–77, ECF No. 105-12; Employer AT&T's January 2016 MTD Report 71–77, ECF No. 105-13; Employer AT&T's March 2016 MTD Report 94–70, ECF No. 105-14.

on MTD reports but based on Scorecards, which were adjusted to account for FMLA leave. *Id.* at 14–16. And AT&T claims Flores was fired after missing Scorecard targets that were adjusted for his FMLA leave. *Id.* at 14–15. In support of this allegation, AT&T cites to the declarations of two of Flores's managers, *id.* at 15 (citing Soliz Decl., ECF No. 126-14; Jacquez Decl., ECF No. 126-3), and the deposition of the developer of the computer-automated Scorecard system, *id.* at 15–16 (citing Olivas Dep., ECF No. 126-21).

AT&T cites to *Henderson* to claim Flores is not entitled to adjustments to performance targets to account for FMLA leave. *Id.* at 13 (citing *Henderson*, 2018 WL 4326936, at *4). The Court disagrees with AT&T's interpretation of *Henderson*. While the court in *Henderson* declined to hold that there is a right to adjustments of performance targets for FMLA leave, the issue was not controlling in the case. *Henderson*, 2018 WL 4326936, at *4. The court found that the plaintiff was not held to full-time targets so the right to adjustments was not implicated. *Id.* Further, *Henderson* held that a government official did not have "fair warning" of a "clearly-established" right to adjustments for the purposes of qualified immunity, which is not at issue in this case. *Id.* The *Henderson* opinion even acknowledges that "[t]he extent to which a non-full-time performance standard must be adjusted to account for the taking of intermittent FMLA leave remains unclear." *Id.* Because the existence of a right to adjustments of performance targets for FMLA leave is unsettled in the Fifth Circuit, AT&T cannot show it is entitled to "judgment as a matter of law" as required for summary judgment by Federal Rule of Civil Procedure 56(a).

Here, a genuine issue of material fact exists about whether the performance targets that formed the basis for Flores's termination were adjusted to account for his FMLA leave. The parties advance contradictory factual allegations, each supported by different

12

witnesses. Because credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, summary judgment should be denied. *Liberty Lobby*, 477 U.S. at 255.

### b. A Genuine Issue Of Material Fact Exists About Whether Flores Was Prevented From Taking FMLA Leave.

Flores also alleges that AT&T interfered with his right to take FMLA leave when Lezama intimidated and pressured him when he called to take FMLA leave. Flores's Mot. 10, ECF No. 105. Flores claims Lezama's treatment prevented him from taking FMLA leave. *Id.* As a result, Flores claims he had to take paid vacation days for the time off. Flores's Reply 2, ECF No. 130-1. In support of this allegation, Flores cites to his own deposition. *Id.* (citing Flores Dep. 29:10–24; 36:16–25; 37:1–12; 198:17–21; 258:13–259:3; 265:13–266:15, ECF No. 105-1).

In response, AT&T claims Flores suffered no FMLA injury because he either received his requests for FMLA leave, AT&T's Resp. 22–23, ECF No. 126 (citing Flores Dep. 186; 192:7–9, ECF No. 126-2), or he used a paid illness day or paid vacation day for the time off, *id* at 24–25 (citing Flores's Absence Calendar 2–3, ECF No. 126-15; Lezama Decl. ¶¶ 10–12, ECF No. 126-21). AT&T cites *Villegas v. Albertsons, LLC* in support of the proposition that an employee does not suffer prejudice if he earns "his normal paycheck." *Id.* at 25 (citing 96 F. Supp. 3d 624, 634 (W.D. Tex. 2015) (J. Briones)). AT&T then argues that Flores was not prejudiced because he used a paid illness day or a paid vacation day for the time off instead of taking FMLA leave, thus allowing him to earn his normal pay. *Id.* at 24–25. According to AT&T, "no liability attaches to an employer for violation of the FMLA's prescriptive provisions if the employee suffered no prejudice to his FMLA rights." *Id.* at 23 (citing *Ragsdale*, 535 U.S. at 89). Further, AT&T disputes the adequacy of Flores's deposition as evidence of FMLA

13

interference, claiming "Flores's subjective feelings are not evidence of FMLA interference." *Id.* at 24 (citing *Lottinger v. Shell Oil Co*, 143 F. Supp. 2d 743, 775 (S.D. Tex. 2001)).

Interfering with an employee's FMLA rights can include "not only refusing to authorize FMLA leave, but [also] discouraging an employee from using such leave." 29 C.F.R. § 825.220(b). An employee alleging discouragement from taking FMLA leave must plead and present evidence that he refrained from taking FMLA leave to which he was entitled because of actions by the employer. *De La Garza-Crooks v. AT&T*, 252 F.3d 436 (5th Cir. 2001); *see also Elsayed v. Univ. of Houston*, No. CIVA. H-11-3636, 2012 WL 2870699, at *3 (S.D. Tex. July 11, 2012). An employee alleging FMLA interference also must prove that the interference caused him prejudice. *Ragsdale*, 535 U.S. at 89. Prejudice is a "real impairment" of an employee's FMLA rights. *Downey*, 510 F.3d at 540 (quoting *Ragsdale*, 535 U.S. at 90). An employee's benefits constitute FMLA prescriptive rights. 29 U.S.C.A. § 2614(a).

Because interfering with FMLA rights can include discouraging Flores from using FMLA leave even if AT&T grants every request for FMLA leave from Flores, AT&T could still interfere with Flores's FMLA rights if it discouraged him from using FMLA leave. 29 C.F.R. § 825.220(b). Flores alleges AT&T did so here. Flores's Mot. 10, ECF No. 105. Likewise, AT&T can interfere with Flores's FMLA rights if AT&T discouraged Flores from taking FMLA leave resulting in him using a paid vacation day for the time off, as Flores also alleges he did in this case. Flores's Reply 2, ECF No. 130-1. Flores has sufficiently pled prejudice to survive summary judgment.

Unlike the plaintiff in *Villegas*, who was allowed to adjust his work schedule to attend his daughter's medical appointments and to also earn his normal paycheck, 96 F. Supp. 3d at 634, Flores alleges that he had to make use of a limited number of paid vacation days because

he was discouraged from taking FMLA leave. Flores's Reply 2, ECF No. 130-1. Thus, Flores was prejudiced, if he made use of his vacation days, considered a benefit, because AT&T discouraged him from taking FMLA leave. *See Burgdorf v. Union Pac. R.R. Co., Inc.*, No. 5:16-CV-1046-DAE, 2019 WL 2464485, at \*10 (W.D. Tex. Feb. 26, 2019) ("Prejudice exists when an employee loses . . . benefits by reason of the violation") (citing 29 U.S.C. § 2617(a)(1)).

AT&T's reliance on *Lottinger* in support of its argument that Flores's subjective feelings are not evidence of FMLA interference is also misplaced. The portion of *Lottinger* that AT&T cites concerns FMLA discrimination, not interference, and cites to other cases considering subjective belief of discrimination. 143 F. Supp. 2d at 775. FMLA interference claims, unlike discrimination claims, "do not require a showing of discriminatory intent"—the plaintiff must prove only an act of interference. *Cuellar*, 731 F.3d at 350 (Elrod, J., concurring).

Flores has plead and presented evidence that he refrained from taking leave because of AT&T's discouragement. Flores's Mot. 10, ECF No. 105 (citing Flores Dep. 29:10–24; 36:16–25; 37:1–12; 198:17–21; 258:13–259:3; 265:13–266:15, ECF No. 105-1). AT&T responds by pointing to responses in Flores's deposition in which Flores purportedly answers that AT&T did not prevent him from taking FMLA leave. AT&T's Mot. 21, ECF No. 108 (citing Flores Dep. 192:7–9; 192:19–21, ECF No. 108-1). The contradictory allegations by Flores and AT&T create a genuine dispute about a material fact—whether AT&T's discouragement prevented Flores from taking FMLA leave—justifying a denial of summary judgment.

### c. A Genuine Issue Of Material Fact Exists About Whether Flores's February 22, 2016, Absence Is Entitled To FMLA Protection.

Flores asserts that "AT&T misclassifie[d] [ ] Flores's February 22, 2016[,] absence as 'illness' rather than FMLA-protected leave, thereby rendering said absence

unprotected." Flores's Mot. 12, ECF No. 105 (citing Flores's Absence Calendar, ATT000012–ATT000013; Flores Dep. 33:17–34:4; 34:19–23; 184:10–22; 185:17–22, ECF No. 105-1).

In response, AT&T argues that Flores was not entitled to FMLA leave for his absence on February 22, 2016, because he failed to provide medical certification for his purported health issue, the flu. AT&T's Resp. 20, ECF No. 126 (citing Villareal Decl. ¶ 5, ECF No. 126-22). AT&T claims Flores knew of AT&T's policy of requiring medical certification for FMLA leave because Flores had complied with the requirement for previous FMLA leave requests. *Id.* (citing Flores's Dep 29, 69–70, 259–260, 259–260, ECF No. 126-2; AT&T's FMLA Policy 5, ECF No. 126-3). AT&T also argues that the flu is not a "serious health condition" for which an employee is entitled to take FMLA leave. *Id.* at 21–22. In support of this argument, AT&T cites to a "bright-line test" that the Fifth Circuit adopted for determining whether a health condition qualifies as a "serious health condition:" "when an employee is (1) incapacitated for more than three days, (2) seen once by a doctor, and (3) prescribed a course of medication." *Id.* (quoting *Price v. Marathon Cheese Corp.*, 119 F.3d 330, 335 (5th Cir. 1997)) (internal quotations omitted). According to AT&T, Flores has not produced evidence that he received care or was prescribed medicine for the flu. *Id.* at 22.

In reply, Flores alleges that AT&T did not produce evidence that it provided notice that medical certification was required for the February 22, 2016, absence or that failure to produce certification would result in denial of FMLA benefits. Flores's Reply 3, ECF No. 130-1. Flores also argues that medical certification for the flu was not necessary because his hypertension exasperated his flu symptoms and he had already received intermittent FMLA leave for hypertension. *Id.* at 3–4; Flores's Resp. 4, ECF No. 114-1 (citing *Barron v. Runyun*, 11 F.Supp.2d 676, 680–81 (4th Cir. 2000) for the proposition that medical certification only needs

16

to be submitted for the first instance of intermittent FMLA leave).    Finally, Flores argues that

because AT&T granted Flores FMLA leave for February 24, 25, 27, and 29, 2016, for which

Flores was also absent for the flu, AT&T evidently did receive sufficient medical certification

but still misclassified the February 22, 2016, absence as "illness" rather than FMLA-protected

leave.    *Id.* at 4.

While an employer may require that a request for FMLA leave be supported by

medical certification, "[i]f an employer requests such documentation, it is required to notify the

employee of the consequences for failing to provide an adequate certification."    29 C.F.R. §

825.301(b)(1)(ii).    An employer may impose "usual and customary notice and procedural

requirements for requesting leave."    29 C.F.R. § 825.302(d); *see also Anderson v. New Orleans

Jazz & Heritage Festival & Found., Inc.*, 464 F. Supp. 2d 562, 568 (E.D. La. 2006) (finding that

an employer's FMLA policy requiring employees to complete a one-page absentee form was a

permissible requirement for requesting leave).    If the employer finds the certification form

incomplete, the employer must advise the employee of the deficiency and provide the employee

a reasonable opportunity to cure any such deficiency.    29 C.F.R § 825.305(d);    *Urban v.

Dolgencorp of Texas, Inc.*, 393 F.3d 572, 574 (5th Cir. 2004), *decision clarified on denial of

reh'g*, 398 F.3d 699 (5th Cir. 2005).    However, an employer is not required to advise the

employee of a failure to submit medical certification altogether, nor is the employer required to

provide the employee an opportunity to cure that deficiency.    *Urban*, 393 F.3d at 575–77.

In this case, Flores had notice of AT&T's FMLA policy requiring medical

certification for leave.    Flores's Dep. 29, 69–70, 259–260, 259–260, ECF No. 126-2; AT&T's

FMLA Policy 5, ECF No. 126-3.    AT&T was not required to advise Flores that he failed to

submit medical certification for the flu, nor was AT&T required to provide Flores an opportunity to submit medical certification once Flores failed to do so. *Urban*, 393 F.3d at 575–77.

The Court agrees with the Eastern District of Virginia in *Barron* that an employee only needs to provide medical certification for the first instance of intermittent FMLA leave. 11 F.Supp.2d at 681–83 (4th Cir. 2000). AT&T approved Flores for intermittent FMLA leave for hypertension in 2015 and 2016. AT&T's Resp. 16, ECF No. 126. Flores also argues that his hypertension exasperated his flu symptoms in February 2016. *Id.* at 3–4; Flores's Resp. 4, ECF No. 114-1 (citing Flores Dep. 34:13–15, ECF No. 114-2). AT&T replies by citing to an answer in Flores's deposition in which Flores purportedly saw his physician on February 22, 2016, for a sinus infection and a fever without mentioning hypertension. AT&T's Resp. 21, ECF No. 126 (citing Flores Dep. 186:4–8, ECF No. 126-2). The conflicting allegations create a genuine dispute about the relatedness of Flores's purported flu to his existing hypertension, and whether the February 22, 2016, absence is covered under Flores's intermittent FMLA leave for hypertension. This genuine dispute about a material fact justifies a denial of summary judgment.

Because there are genuine disputes of material fact regarding the ways in which Flores claims AT&T interfered with his FMLA rights, summary judgment on Flores's FMLA interference claim should be denied. The Court will now consider summary judgment on Flores's FMLA retaliation and discrimination claim.

### 2. Summary Judgment Should Be Denied On Flores's FMLA Retaliation and Discrimination Claim.

"The [FMLA]'s prohibition against interference prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights." 29 C.F.R. § 825.220; *see also Lee v. Kansas City S. Ry.*

18

*Co.*, 574 F.3d 253, 258 (5th Cir. 2009) ("The FMLA not only requires employers to permit employees to take leave under the statutory framework, it prohibits employers from retaliating against employees for doing so.").

Where, as here, the plaintiff proffers no direct evidence of retaliation, courts employ the *McDonnell Douglas Corporation v. Green* burden-shifting framework "to determine whether an employer discharged an employee in retaliation for participating in FMLA-protected activities." *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005). Under *McDonnell Douglas*, the plaintiff bears the initial burden of establishing a prima facie case of retaliation. *See* 411 U.S. 792, 802 (1973). If the plaintiff successfully meets this burden, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for its employment decision. *Id.* The defendant's burden is one of production only, however, and the ultimate burden of persuasion remains with the plaintiff at all times. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). If the defendant proffers a legitimate, non-retaliatory reason for its employment decision, the plaintiff receives an opportunity to demonstrate that the given reason is pretext for retaliation. *See McDonnell Douglas*, 411 U.S. at 804.

In this case, Flores has established a prima facie case on the claim and AT&T has articulated a legitimate, non-retaliatory reason for Flores's termination. However, summary judgment on Flores's FMLA retaliation and discrimination claim should be denied because there

is a genuine dispute of material fact about whether AT&T's proffered reason for terminating

Flores is a pretext for retaliation for taking FMLA leave.

### a. Flores Has Established A Prima Facie Case For FMLA Retaliation and Discrimination.

Under *McDonnell Douglas*, the plaintiff bears the initial burden of establishing a

prima facie case of retaliation. *See* 411 U.S. 792, 802 (1973).

> To establish a prima facie case for discrimination or retaliation under the FMLA, the plaintiff must demonstrate that:
> (1) he is protected under the FMLA;
> (2) he suffered an adverse employment decision; and either
> (3a) that the plaintiff was treated less favorably than an employee who had not requested leave under the FMLA; or
> (3b) the adverse decision was made because of the plaintiff's request for leave.

*Bocalbos v. Nat'l W. Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir. 1998); *see also Hunt v. Rapides*

*Healthcare Sys., LLC*, 277 F.3d 757, 768 (5th Cir. 2001).   Unlike interference claims,

retaliation claims require the plaintiff to show discriminatory intent.   *Cuellar*, 731 F.3d at 349

(Elrod, J., concurring).

Under the "3(b)" prong of a prima facie case for FMLA retaliation and

discrimination, establishing a causal link is not an onerous burden for the plaintiff.   *See Hardtke*,

2006 WL 2924942, at *6.   When showing causation, "[t]he plaintiff only needs to show that the

protected activity and the adverse employment action were not completely unrelated."   *Id.*

"When evaluating whether the adverse employment action was causally related to the FMLA

protection, the court shall consider the 'temporal proximity' between the FMLA leave, and the

termination."   *Mauder*, 446 F.3d at 583.   However, close temporal proximity between an

employee taking FMLA leave and an adverse employment decision, by itself, is not enough to

establish a causal link between the FMLA leave and the adverse decision.   *Vargas v. McHugh*,

630 F. App'x 213, 216 (5th Cir. 2015); *Amsel v. Tex. Water Dev. Bd.*, 464 F. App'x 395, 401–02 (5th Cir. 2012).

Flores repeats his arguments about unadjusted performance targets to support an argument that AT&T retaliated and discriminated against him for taking FMLA leave. *See supra* 3–4, 11; Flores's Mot. 15–18, ECF No. 105. Flores asserts that his termination for failing to meet unadjusted performance targets is an adverse employment decision. *Id.* Flores then argues that the close temporal proximity between his FMLA leave and the discipline and eventual termination is evidence that his FMLA leave caused his termination. *Id.* at 18–19. Alternatively, Flores argues that AT&T cannot establish a nondiscriminatory reason for his termination as required under the *McDonald-Douglas* burden-shifting framework. *Id.* at 20 (citing *McDonnell Douglas*, 411 U.S. at 802). Accordingly, Flores argues that he is entitled to judgment as a matter of law as to his claims of AT&T's retaliation and discrimination against him. *Id.* at 19. Additionally, Flores uses the same arguments to assert that AT&T is not entitled to summary judgment denying his retaliation and discrimination claim. Flores's Resp. 26–29, ECF No. 114-1.

In response, AT&T contends that Flores has not met the third element of a prima facie case of FMLA retaliation and discrimination. AT&T's Resp. 16–17, ECF No. 126. AT&T claims that Flores has not "identified a single, similarly situated employee who did not request FMLA leave and had a history of ongoing performance issues, yet was allowed to remain employed." *Id.* at 16 (citing *Mauder v. Metro. Transit Auth.*, 446 F.3d 574, 583 (5th Cir. 2006)). AT&T also argues that Flores's argument concerning temporal proximity does not establish causation and "[t]he fact that AT&T provided Flores with FMLA intermittent leave without incident for almost four years negates any causal link between his discipline and

21

dismissal and FMLA [leave]." *Id.* at 16–17 (citing *Amsel v. Tex. Water Dev. Bd.*, 464 F. App'x 395, 401–02 (5th Cir. 2012)). Finally, AT&T argues that "Flores has not proven AT&T's stated reason for disciplining and dismissing him was pretextual." *Id.* at 17–18 (citing *Mauder*, 446 F.3d at 583). Accordingly, AT&T asserts that Flores is not entitled to summary judgment for his retaliation and discrimination claim. *Id.* at 16. AT&T also uses the same arguments to argue that it is entitled to summary judgment denying Flores's retaliation and discrimination claim. AT&T's Mot. 24–27, ECF No. 108.

However, AT&T's assertion that Flores failed to make a prima facie case for FMLA retaliation and discrimination claim is unsuccessful because the third element to establish a prima facie case has two alternative prongs. Flores must establish "either (3a) that [he] was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because of [his] request for leave." *Bocalbos*, 162 F.3d at 383. Thus, Flores is not required to establish the first prong—that he was treated less favorably than a similarly situated employee who had not request leave under the FMLA. *See id.* Flores can, and does, attempt to establish the third element through the second prong—that his termination was made because of his request for FMLA leave. Flores's Mot. 18–19, ECF No. 105.

Here, Flores does not only rely on temporal proximity as evidence of causation. Flores also cites the affidavit of Velez, a former AT&T manager, testifying that "AT&T penalized [ ] employees for taking medical leave and/or disability leave because the employee's MTD performance/percentage targets were negatively affected, which negatively affected their monthly and yearly performance metric targets . . ." Aff. of Velez 3, ECF No. 105-5. Velez also testified that the unadjusted performance metrics were then used to "progress [employees] through the steps of discipline for termination as quickly as possible." *Id.* at 2. Additionally,

even though AT&T may have provided Flores with intermittent FMLA leave without incident for almost four years, as AT&T asserts, Velez's testimony is sufficient evidence of retaliatory animus. Thus, the Court is of the opinion that Flores has satisfied his initial burden and that the burden now shifts to AT&T to establish a legitimate, non-retaliatory reason for Flores's discharge.

### b. AT&T Has Proffered A Legitimate, Non-retaliatory Reason For Flores's Termination.

Once established by the plaintiff, a prima facie case of retaliation raises a presumption of retaliation, which the defendant must rebut by articulating a legitimate, non-retaliatory reason for its action. *See Burdine*, 450 U.S. at 255. The defendant's burden, however, is one of production only, merely requiring the defendant to set forth, through admissible evidence, "reasons for its actions which, *if believed by the trier of fact*, would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (emphasis in original). Nevertheless, a legitimate, non-discriminatory reason "must be legally sufficient to justify a judgment for the defendant." *Burdine*, 450 U.S. at 255.

Here, AT&T proffers that Flores was dismissed after failing to meet performance targets that were adjusted to account for his FMLA absences. AT&T's Mot. 26–27, ECF No. 108; AT&T's Resp. 27–28, ECF No. 126. In support of this allegation, AT&T cites to the declarations of two of Flores's managers, AT&T's Resp. 15, ECF No. 126 (citing Soliz Decl., ECF No. 126-14; Jacquez Decl., ECF No. 126-3), and the deposition of the developer of the computer-automated Scorecard system, *id*. at 15–16 (citing Olivas Dep., ECF No. 126-21). Because AT&T produced evidence that support a finding that unlawful discrimination was not the cause of the employment action, the Court is of the opinion that AT&T has met its burden

23

and proffered a legitimate, non-retaliatory reason for discharging Flores. Therefore, the burden shifts back to Flores to prove that AT&T's reason is a pretext for retaliation.

### c. A Genuine Issue Of Material Fact Exists About Whether The Scorecards Used To Terminate Flores Are A Pretext For Discrimination.

Once a defendant proffers a legitimate, non-retaliatory reason for a plaintiff's discharge, the plaintiff's prima facie case is rebutted, shifting the burden back to the plaintiff. *Burdine*, 450 U.S. at 255. To overcome a defendant's motion for summary judgment, a plaintiff must "offer sufficient evidence to create a genuine issue of fact that . . . defendant's stated reason was a pretext for discrimination . . ." *Hardtke*, 2006 WL 2924942, at *8.

As addressed already, *see supra* 11–13, a genuine issue of material fact exists about whether the performance targets which formed the basis for Flores's termination were adjusted to account for his FMLA leave. Thus, a reasonable jury could conclude that the adjusted Scorecards purportedly used to terminate Flores are a pretext for retaliation against Flores for taking FMLA leave and that Flores was terminated based on unadjusted MTD reports. Summary judgment, therefore, is not appropriate on Flores's FMLA retaliation and discrimination claim.

## CONCLUSION

The Court holds that genuine issues of material fact exist regarding Flores's claims against AT&T for FMLA interference, and retaliation and discrimination.

Accordingly, **IT IS HEREBY ORDERED** that Plaintiff Efraim Flores's "Second Motion for Partial Summary Judgment," ECF No. 105, is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant AT&T Corp.'s "Amended Motion for Summary Judgment," ECF No. 108, is **DENIED.**

SIGNED this _6th_ day of **November 2019.**

_____
**THE HONORABLE DAVID BRIONES**
**SENIOR UNITED STATES DISTRICT JUDGE**